UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PETER GODINO,

  Plaintiff,

-VS-

CONN APPLIANCES, INC.,

  Defendant.
_____/

CASE NO.:  4:19-cv-2025

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Peter Godino (hereinafter "Plaintiff"), sues Defendant, Conn Appliances, Inc. (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA").

## INTRODUCTION

1. In describing the importance of the TCPA, Senator Hollings, the TCPA's sponsor, said "I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man.'" 137 Cong. Rec. 30.821 (1991).

2. As the Seventh Circuit Court of Appeals wrote: "No one can deny the legitimacy of the state's goal: preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans v. Zoeller,* 845 F.3d 303, 305-306 (7th Cir. 2017).

3. Defendant never had Plaintiff's express consent to place automated calls, and yet repeatedly made unsolicited calls to Plaintiff's cellular telephone, even after Plaintiff demanded the calls stop, in violation of the Telephone Consumer Protection

1

Act, 47 U.S.C. § 227 (the "TCPA"). Defendant made unauthorized and illegal calls to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") including a predictive dialer or pre-recorded voice for the purpose of attempting to contact a third party whom Plaintiff does not currently, nor has ever known.

## JURISDICTION AND VENUE

4. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

5. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

6. Defendant's principal place of business is in The Woodlands, Texas. Accordingly, venue is appropriate with this Court under 28 U.S.C. § 1391(b)(1), as it is the judicial district in the State where the Defendant resides.

## FACTUAL ALLEGATIONS

7. Plaintiff is a natural person, and citizen of the State of Florida, residing in North Port, Sarasota County, Florida.

8. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

9. Defendant is a corporation with its principal place of business located at 4055 Technology Forest Boulevard, Suite 210, The Woodlands, Texas 77381.

10. Defendant called Plaintiff repeatedly and continuously from its Noble Systems automatic telephone dialing system in an attempt to find someone by the name of "Lisa" whom Plaintiff does not know.

11. Defendant's Noble Systems automatic telephone dialing system dials numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1) and the Federal Communications Commission's ("FCC's") 2003 Order regarding the TCPA. See *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003); *Adams v. Ocwen*, Case No. 18-81028, Dkt. No. 23 (M.D.Fl. Oct. 29, 2018).

12. Defendant's ATDS dials telephone numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1). *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sept. 20, 2018).

13. An essential component of Defendant's ATDS is that it uses a .csv file to upload numbers on to the system. Within this .csv file, Defendant is capable of generating random or sequential numbers to be dialed without any human intervention.

14. In addition, Defendant called Plaintiff in a "Broadcast" campaign using both an artificial voice and pre-recorded messages as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.

15. In a broadcast campaign, the system automatically calls customers with no human being involved at the time of dialing. If a customer answers a call made in this mode, he will be automatically be connected to an artificial voice message through an Interactive Voice Response

system (IVR). Furthermore, in this mode Defendant has the option of leaving a pre-recorded message for the called party if it recognizes a voicemail.

16. Plaintiff has received pre-recorded messages from Defendant.

17. Defendant also used its ATDS in a "Predictive" campaign to call Plaintiff's cellular telephone number.

18. In a predictive campaign the system automatically calls customers from a list of numbers with no human being involved at the time of dialing. If a customer answers a call made in this mode, the system will automatically transfer that caller to an available agent who will field the call.

19. At the time of dialing, agents fielding broadcast or predictive mode calls do not know what numbers are being dialed by the system, as the computer is randomly or sequentially dialing numbers without human intervention.

20. Agents only ever become aware of a customer being called if that customer answers and is then automatically transferred to the agent. At that time, the customer's demographic information automatically populates on the agent's computer screen. Prior to this, agents have no idea who the system is auto-dialing.

21. Plaintiff also received "abandoned calls" from Defendant.

22. Abandoned calls occur when Defendant's automated system calls more customers than it has agents available, and as a result a customer who answers hears nothing but dead air, as the Noble Systems automatic telephone dialing system is unable to transfer the call it dialed to a human being.

23. On average, Defendant uses its ATDS to make over 600,000 outbound calls per day.

24. Plaintiff is the subscriber, regular user, and carrier of the cellular telephone number (813) ***-1205 and was the called party and recipient of Defendant's calls.

25. Defendant placed hundreds of automated calls to Plaintiff's cellular telephone number (813) ***-1205 in an attempt to locate an unspecified person known only as "Lisa."

26. Defendant intentionally directed calls at Plaintiff's Tampa Bay area based (813) cellular telephone number.

27. Plaintiff does not have any business dealings or accounts with Defendant nor has he ever done any business or possessed any account with Defendant.

28. Plaintiff has never given his express consent to have his cellular telephone be called by Defendant.

29. On several occasions since Defendant's campaign of harassing automated calls began, Plaintiff has instructed Defendant's agent(s) to stop calling his aforementioned cellular telephone.

30. Unfortunately, no matter how many times Plaintiff asked for the calls to stop, Defendant continued to harass Plaintiff by bombarding him with automated calls, including calls utilizing pre-recorded messages.

31. Defendant had no legitimate purpose in calling that many times, especially since Defendant never had any express consent from Plaintiff to call, which is compounded by the fact Plaintiff repeatedly asked them to stop. Rather, Defendant displayed a pattern of behavior that can only be described as an intentional and willful attempt to harass and abuse the Plaintiff.

32. Plaintiff recalls approximately twenty (20) occasions in which he answered a call from Defendant, stayed on the line until an agent answered, and instructed the agent to cease calling his cellular telephone.

33. Despite multiple requests for the calls to stop, Defendant has continued to bombard Plaintiff with unwanted and harassing automated calls, also known as "robo-calls".

34. Due to the high volume of calls Defendant placed to Plaintiff's cellular telephone, as well as due to how many times he spoke to them, Plaintiff does not recall with specificity every single conversation he had with Defendant.

35. In addition to repeatedly informing Defendant's agents that he wished for the calls to stop and that they were calling the wrong number, Plaintiff also sent Defendant several written requests for cessation.

36. On or about March 7, 2019 at 1:15 PM, Plaintiff went to Defendant's website and sent Defendant an email (to which he received confirmation #820765 as to his submittal) which read, in part: "I have asked numerous times to be taken off your list. Yet you call again."

37. On or about March 7, 2019 at 4:49 PM, a representative from Defendant known only as "Ladayzsia" emailed Plaintiff back stating in part: "I do apologize for the calls, when I look up the number you provided 813-***-1205 no information comes up. You should not receive any more calls." (Plaintiff's number redacted for purposes of filing)

38. Despite Defendant stating they have no information on Plaintiff and that the calls would stop, the calls persisted. In fact the following day, on or about, March 8, 2019, Defendant placed eight (8) more robo-calls calls to Plaintiff from 727-219-1684 at 10:48 AM, 10:52 AM, 10:54 AM, 11:32 AM, 11:33 AM, 1:46 PM, 4:45 PM and 5:05 PM.

39. On or about March 19, 2019, Plaintiff went on Defendant's Facebook page and sent the company a message, including an attachment of a screen shot of some of the calls Defendant had placed to his cellular telephone, and stated: "Stop calling me. Here is a screenshot

from just today and how many times you called me and hung up. I have asked you to take me off your calling list and you're still calling me if I get one more, I'm contacting a lawyer."

40. Despite such a clear and unequivocal request for a cessation of calls, Defendant persisted in placing robo-calls to Plaintiff's cellular telephone.

41. On or about March 21, 2019 at 4:11 PM, Plaintiff yet again went to Conn's website and sent an email to Conn (to which he received confirmation #826068 as to his submittal) which read in part: "Stop calling me. I have sent call logs to your Facebook message where I can attach photos. You call me 5 to 8 times a day."

42. Despite this clear and unequivocal request for the calls to stop, Defendant continued to bombard Plaintiff's cellular telephone number with automated calls dialed by its automatic telephone dialing system that same day and every day following it.

43. On several other occasions Plaintiff again visited Defendant's Facebook page and sent messages to Defendant requesting a cessation of calls, one of which read in part: "You are still calling me. Many times a day. Your customer service department can't figure out how not to but it is funny that you call me and hang up right away so you know this is not a number you're supposed to be calling. I'm asking you again do not call me. All of these calls are being logged, you are breaking the law by calling me and I am going to call a lawyer."

44. Defendant placed robo-calls to Plaintiff from telephone number 843-279-5911 on or about, March 22, 2019 at 3:47 PM and 5:39 PM and on or about, March 26, 2019 at 12:21 PM and 1:32 PM.

45. Defendant placed robo-calls to Plaintiff from telephone number 843-279-5904 on or about, March 25, at 11:34 AM, 12:41 PM, 2:40 PM, 4:07 PM and 5:24 PM.

46. Defendant placed robo-calls to Plaintiff from telephone number 727-330-3948 on or about, March 25, 2019 at 12:51 PM and on or about, March 26, 2019 at 2:17 PM and 2:18 PM.

47. Plaintiff's numerous verbal and written requests for the telephonic harassment to end were ignored.

48. Defendant has a corporate policy to use its automatic telephone dialing system and pre-recorded/artificial voice calls to harass and intimidate individuals like Plaintiff.

49. Defendant's policies and procedures are entirely toothless and are created simply for purposes of litigation. In reality, Defendant's agents and compliance teams ignore do not call requests from consumers and allow those consumers to be harassed by non-stop robo-calls.

50. Defendant has been sued for violating the TCPA hundreds of times by consumers all across the country.

51. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant's agents to remove the number.

52. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

53. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

54. Defendant has admitted in legal documents filed with the United States Securities and Exchange Commission that it utilizes a Noble Systems Predictive Dialer, which is a type of automatic telephone dialing system.

55. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however Defendant continues to robo-call these individuals.

56. Defendant's corporate policy provided no real means for Plaintiff to have his number removed from Defendant's call list.

57. Defendant's business model is designed to abuse consumers with robo-calls in an effort to pressure them into making their payments.

58. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

59. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

60. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff as to each robo-call made to Plaintiff's cellular telephone as Defendant never possessed Plaintiff's express consent to be called.

61. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

62. Defendant's non-stop robo-calls drained Plaintiff's cellular telephone battery and occupied its ability to receive other calls.

63. Defendant's non-stop robo-calls wasted Plaintiff's time. For answered calls, Plaintiff had to waste time explaining that Defendant had the wrong number. For missed calls, Plaintiff had to waste time reviewing missed call notifications on his phone. For pre-recorded messages, Plaintiff had to waste time listening to the message. Further, Plaintiff wasted time sending multiple written "do not call" requests to Defendant that were ignored.

64. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Defendant never had Plaintiffs permission to call his cellular telephone yet continued to bombard him with robo-calls for no legitimate purpose.

65. Plaintiff is a residential real estate agent. Defendant's unwanted and harassing robo-calls interrupted Plaintiff during showings, listing appointments, and phone calls with clients. Plaintiff will testify that these calls were "very distracting" and that they upset him tremendously.

66. Plaintiff was affected by Defendant's robo-calls in a personal and individualized way, including but not limited to the frustration, stress, and anger he experienced as a result of the unwanted calls.

## COUNT I
### (Violation of the TCPA)

67. Plaintiff fully incorporates and re-alleges paragraphs one (1) through sixty-six (66) as if fully set forth herein.

68. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the ATDS initiated robo-calls made to Plaintiff's cellular telephone without having the Plaintiff's prior express consent.

69. Despite Plaintiff demanding that the calls stop on multiple occasions, Defendant continued its pattern of harassment and abuse, and made it clear to Plaintiff that Defendant would call from its automatic telephone dialing system as often as it liked until Plaintiff directed them towards the individual known only as "Lisa."

70. There is no way to describe Defendant's violation of the law other than willful and knowing. As a result, Plaintiff should be awarded treble damages of $1,500 per violation for the harassment and abuse Defendant put him through.

71. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and pre-recorded messages and an artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Conn Appliances, Inc., for statutory damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/Amy E. Clark, Esquire*
Amy E. Clark, Esquire
Texas Bar #: 24043761
Amy Clark Law
223 W. Anderson Lane, #B508
Austin, TX 78752
Telephone: (512) 850-5290
amy@amyclarklaw.com
*Counsel for Plaintiff*